**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

| | | |
|---|---|---|
| **TINA BETHANY, Individually and on behalf of Others Similarly Situated** | ) | |
| **Plaintiff(s),** | ) | |
| **vs.** | ) | **NO. 3:17-cv-00010-DPM** |
| **CAREPLUS STAFFING SERVICES, LLC, et al.** | ) | |
| **Defendants.** | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY LITIGATION PENDING ARBITRATION**

COME NOW the separate Defendants, CarePlus Staffing Services, LLC; Summit Health and Rehabilitation, LLC; Progressive Eldercare Services, Inc. d/b/a Southern Trace Rehabilitation and Care Center; Courtyard Rehabilitation and Health Center, LLC; SA Eldercare, LLC; Progressive Eldercare Services – Morrilton, Inc. d/b/a Brookridge Cove Rehabilitation and Care Center; and John Ponthie (collectively referred to as "THESE DEFENDANTS" unless specifically identified herein), and hereby submit this Brief in Support of their Motion to Compel Arbitration and to Dismiss or Stay Litigation Pending Arbitration. Pursuant to the contract entered between the parties, Plaintiff is required to arbitrate the claims alleged in this action. Under well-established law, Plaintiff should be ordered to arbitrate her claims, and this litigation should be dismissed or stayed pending the arbitration.

## I. INTRODUCTION & BACKGROUND

These Defendants move to compel arbitration and to stay discovery based on an unequivocal written agreement which requires Plaintiff to submit any claim arising out of her employment to be resolved by arbitration. Plaintiff Tina Bethany ("Bethany"), individually and

on behalf of all others similarly situated, asserts claims against These Defendants for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq*. ("AMWA"). *See* First Amended and Substituted Complaint – Collective Action ("Complaint"), ¶ 1. Bethany entered into an *Agreement to Arbitrate Disputes* (the "Agreement") by virtue of her employment at the long term care nursing facility known as Walnut Ridge Nursing and Rehabilitation Center ("Walnut Ridge"), which encompasses the causes of action and claims made in her Complaint. A true and correct copy of this Agreement is attached as Exhibit "A" to These Defendants' Motion to Compel Arbitration and to Dismiss or Stay Litigation Pending Arbitration, and is incorporated herein by reference.

Bethany was employed by Lawrence Operations, LLC d/b/a Walnut Ridge Nursing and Rehabilitation Center as a licensed practical nurse ("LPN") beginning in July 2015 until December 2016. *See* Exhibit B, Declaration of Suzann Wilson ("Wilson Dec."), ¶¶ 4, 8. On September 1, 2015, Walnut Ridge transitioned to a non-profit entity, Lawrence - Progressive ElderCare Services, Inc. d/b/a Walnut Ridge Nursing and Rehabilitation Center. *Id.* at ¶ 6. As a result of the transition, Bethany was employed by CarePlus Staffing Services ("CarePlus") from September 1, 2015 until her termination in December of 2016. *Id.* at ¶¶ 7-8. During the entirety of her employment with Walnut Ridge, Bethany worked in the same position as LPN and at the same nursing facility, Walnut Ridge. *Id.* at ¶ 9. Accordingly, These Defendants are covered by the definition of "Facility,"[1] which encompasses all entities she may serve as a result of her employment at Walnut Ridge. *See* Ex. A at p. 1.

---

[1] The Agreement defines "Facility" to include "Lawrence Operations, LLC d/b/a Walnut Ridge Nursing and Rehabilitation Center, any of its affiliates, subsidiaries, parent companies, owners,

Bethany alleges These Defendants are liable to her and other employees for unpaid overtime payments under the FLSA and AMWA. *See* Complaint, ¶ 31. All of the claims raised in her lawsuit against These Defendants are subject to the Agreement. The Agreement, acknowledge and agreed to by Bethany on July 17, 2015, sets forth the parties' agreement to arbitrate. *See* Exhibit C, *Employee Acknowledgement*. Specifically, the Agreement states:

> Except as provided in Section 2, **this Agreement requires that any claim, controversy, or dispute arising out of or related to your employment with the Facility be resolved by an arbitrator through final and binding arbitration** in the state in which the Facility at which you are or were employed is located, and not in a court of law or by jury trial, or in any other forum.

Ex. A at p. 1 (emphasis added). The Agreement goes on to state:

> **Claims, controversies, or disputes arising out of or related to your employment with the Facility include, without limitation**: disputes about your employment relationship with the Facility, including **disputes about compensation** … **Fair Labor Standards Act** … **state statutes covering the same or similar subject matters**, all other state statutory claims; and all other state common law claims….**Under this Agreement, both you and the Facility agree to resolve all such claims by a neutral arbitrator through final and binding arbitration** and not in a court of law or any other forum.

*Id.* at p. 2 (emphasis added).

In addition to agreeing to arbitrate any claims related to her employment at the Facility, Bethany also waived any claims for class or collective action:

> You and the Facility agree to bring any disputes to arbitration on an individual basis only, and not on a class, collective, multiple claimant, or private attorney general representative action basis…
>
> …
>
> The parties understand that under this Agreement, there is no right for any dispute to be brought or arbitrated as a collective action. The parties expressly waive any ability to bring a collective action in any forum. (Collective Action Waiver). …

---

operators, controlling entities or persons, members, consultants, or locations at which you may serve as a result of your employment with the aforesaid."

*Id.* at pp. 2-3.

To reiterate the importance of the Agreement, an additional document entitled *Attachment 1, Agreement to Arbitrate Disputes – Please Read* ("Attachment 1"), attached hereto as Exhibit D, was also presented to Bethany. The Attachment explains the arbitration system, advises Bethany that she may seek independent advice from a lawyer regarding the Agreement, and that accepting employment with the facility is an agreement to arbitration. *See* Ex. D.

## II. <u>ARGUMENT AND AUTHORITY</u>

Bethany expressly agreed that all claims arising in connection with her employment at Walnut Ridge would be submitted to arbitration. Because Bethany's claims fall squarely within the scope of the Agreement, the claims must be arbitrated, and the Complaint must be dismissed or stayed.

### A. The Federal Arbitration Act's National Policy Favoring Arbitration Is Applicable To This Action.

Law and public policy dictate that where parties have entered into a valid agreement to arbitrate, it must be enforced. Here, the Agreement entered into by the parties contains an arbitration provision which provides broadly for arbitration of all disputes between the parties arising in connection with disputes regarding Bethany's employment. The Agreement further provides that it is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"). Ex. A. at p. 1.

A written agreement that contains an arbitration clause is required for a contract to fall within the scope of the FAA. *Ark. Diagnostic Ctr. V. Tahiri*, 370 Ark. 1457, 163, 257 S.W.3d 884 (2007). Additionally, the agreement must affect interstate commerce. *Id.* However, connections with interstate commerce are not required when the arbitration provision contains a stipulation that the underlying contract involves interstate commerce. *Pest Mgmt., Inc. v.*

*Langer*, 369 Ark. 52, 59-60, 250 S.W.3d 550 (2007); *see also Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 474-75 (1989)(holding that the parties to a contract have the authority to choose the law that governs their arbitration agreement). Once a valid arbitration agreement has been found, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § at § 4 (emphasis added).

Here, all of Bethany's claims in this case are expressly governed by the FAA. The Agreement specifically states the parties acknowledge and agree "[t]he Agreement is made pursuant to a transaction involving interstate commerce…." Ex. A. at p. 1. The Agreement further states, "the Parties expressly agree that arbitration conducted under this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and shall not be governed by the Arkansas Arbitration Act, Ark. Code Ann. § 16-108-201 et seq. (Supp. 2001)." *Id.* Accordingly, the FAA controls.

Even if the plain language of the parties' Agreement did not remove the need to prove connections with interstate commerce, the FAA nevertheless controls because the agreement affects interstate commerce. Under the FAA, "involving commerce" is the functional equivalent of "affecting commerce," which signals Congress' intention to invoke the broadest exercise of its Commerce Clause power. *Citizen Banks v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The FAA thus encompasses the range of transactions within the flow of interstate commerce. *Id.* Even where the individual transaction at issue does not have a specific effect on interstate commerce, the FAA still applies if "in the aggregate the economic activity in question would represent a general practice subject to federal control." *Id.*

Here, the interstate commerce requirement is met both by the individual transaction and

the activity in the aggregate. Walnut Ridge is a licensed, skilled nursing facility that provides health care treatment and daily personal care to its patients. (Wilson Dec. at ¶ 2). The federal Medicare and Medicaid programs fund the care of many patients at Walnut Ridge. *Id.* at ¶ 3; s*ee In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005); *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 987-88 (Ala. 2004). The underlying Agreement affects interstate commerce, and as such, the FAA governs the Agreement even absent the controlling stipulation of the parties in this case. Given that the Agreements provide that the FAA will govern, and the interstate and international nature of the parties and transactions at issue in this action, there can be no dispute that the FAA controls.

Where there is a valid agreement to arbitrate pursuant to the FAA, it "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Further, where it applies, the FAA preempts all state law on arbitration. *Walton v. Lewis*, 337 Ark. 45, 49, 987 S.W.2d 262, 266 (1999). Thus, "even if a rule of state law would otherwise exclude [] claims from arbitration," the FAA compels that the parties' arbitration agreement be enforced. *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 58 (1995); *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *Pest Management, Inc. v. Langer*, 96 Ark. App. 220, 240 S.W.3d 149 (2006) (holding that parties can arbitrate tort claims when they agree that the FAA, rather than the Arkansas Uniform Arbitration Act, governs their arbitration agreement).

**B. The Federal Arbitration Act Compels That Bethany Arbitrate Her Claims.**

The FAA, 9 U.S.C. § 1 *et seq.*, embodies a strong federal policy favoring arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). As the Supreme Court has stated, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "The FAA reflects the fundamental principle that arbitration is a matter of contract [and] requires courts to enforce [arbitration agreements] according to their terms." *Rent-a-Center W. Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). "To give effect to this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

The FAA provides that a party may petition the court for an order directing that arbitration proceed in the manner provided for in the arbitration agreement. 9 U.S.C. § 4. Where a valid arbitration agreement exists, the FAA explicitly requires that the court "shall" enter an order directing arbitration. *Id.* Because federal law presumptively favors the enforcement of arbitration agreements, the Court, prior to issuing an order compelling arbitration, need only determine: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Faber*, 367 F.3d at 1052. Consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement, or questions of remedy, fall outside the scope of a court's review because they do not affect the validity of the agreement to arbitrate. *Id.* Where the Court finds a valid arbitration agreement, the moving party is entitled to a stay or dismissal of court proceedings pending arbitration as well as an order compelling arbitration under the terms of the agreement. *See* 9 U.S.C. §§ 3-4.

**1. There Is A Valid Agreement To Arbitrate.**

It is well-settled that a signed arbitration agreement is presumed to be valid and enforceable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). "When deciding whether the parties agreed to arbitrate the dispute in question, courts generally should apply ordinary state-law principles that govern the formation of contracts . . . . In applying state law, however, due regard must be given to the federal policy favoring arbitration." *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996).

Under Arkansas state law, the essential elements of an enforceable arbitration agreement include: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. In the context of an arbitration agreement, a court should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, with doubts and ambiguities to be resolved in favor of arbitration. *Showmethemoney Check Cashers, Inc. v. Williams,* 342 Ark. 112, 119-20, 27 S.W.3d 361, 365 (2000); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In the present case, Bethany signed the Agreement. The parties are presumed to have been competent to enter into the Agreement. *United Nat'l Bank of Little Rock v. Smith*, 240 Ark. 354, 356, 400 S.W.2d 652 (1996). The Agreement at issue reflects a valid subject matter, that legal consideration was given, and mutuality of agreement. An arbitration provision is sufficiently mutual in obligation under Arkansas law where both parties are equally bound to the arbitral forum. *See Magee v. Advance Am. Servicing of Ark., Inc.*, No. 6:08–cv–6105, 2009 WL 890991, at *8 (W.D. Ark. Apr. 1, 2009); *Davidson v. Cingular Wireless LLC,* No. 2:06-CV-133-WRW, 2007 WL 896349 (E.D. Ark. 2007). The Agreement applicable here binds the parties equally to the arbitration provisions of the Agreement. This is not a situation in which the

defendant has used an arbitration agreement to shield itself from litigation while reserving to itself the ability to pursue relief through the court system.

In this case, each element of a valid contract is present in each Agreement. Under such circumstances, the arbitration clauses contained within the Agreements are valid and must be enforced. *Prima Paint Corp.*, 388 U.S. at 403-04.

**2. Bethany's Claims Fall Within The Scope Of The Arbitration Agreement.**

Bethany cannot avoid the agreement to arbitrate by asserting that her claims do not fall within the scope of the Agreement. Indeed, the FAA gives the arbitrator the power to determine the scope of the arbitration clause as well as the merits. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 453 (2003). Accordingly, questions concerning whether plaintiff's claims fall within the scope of the arbitration clauses must be resolved by the arbitrator.

Regardless, Bethany's claims fall within the scope of the arbitration clauses. The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration. *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

Arbitration clauses requiring the parties to arbitrate "all claims" or all disputes arising in connection with an agreement have been interpreted by the courts to be broad and all-encompassing. *See, e.g., PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836-37 (8th Cir. 2010) (*citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 n.3 (4th Cir. 2000)) (recognizing "[a]ny dispute arising out of the Contract" as "broad"); *United Food and Commercial Workers Union, Local 400 v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 960 (4th Cir. 1994) (stating that "arises under" is "relatively broad"). When

agreements contain such broad arbitration provisions, arbitration may be compelled as long as the underlying factual allegations simply touch matters covered by the arbitration provision. *PRM*, 592 F.3d at 837 (*citing 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)).

In this case, the Agreement specifically provides for arbitration of "any claim, controversy, or dispute arising out of or related to [Bethany's] employment with the Facility…" *See* Ex. A at p. 1. Bethany's claims against These Defendants directly arise out of and relate to her employment with Walnut Ridge. Therefore, each of Bethany's claims fall within the scope of the arbitration clause.

Furthermore, Bethany specifically agreed to bring any claim in arbitration individually only, and not as a class or collective action. *See* Ex. A, pp. 2-3. Such waivers are enforceable in both Rule 23 class actions and FLSA collective actions. *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) ("arbitration agreements containing class waivers are enforceable in claims brought under the FLSA"). Accordingly, Bethany waived the ability to initiate a class or collective action like the case presented here.

**C. Since All of Bethany's Claims Are Subject to Arbitration Under the FAA, The Lawsuit Should Be Dismissed.**

Courts have held that when all of the claims asserted in the lawsuit are subject to arbitration, the Court has the option to dismiss the lawsuit in its entirety or to stay the lawsuit pending resolution of the arbitration. *See, e.g., Dialysis Access Ctre. V. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

As all claims in this lawsuit against Defendants must be arbitrated, These Defendants respectfully request that this matter be dismissed against These Defendants. In the alternative,

These Defendants request that this action be stayed pending arbitration of the claims. 9 U.S.C. § 3.

## III. CONCLUSION

Based on the foregoing, the separate Defendants, CarePlus Staffing Services, LLC; Southern Administrative Services, LLC; Summit Health and Rehabilitation, LLC; Progressive Eldercare Services, Inc. d/b/a Southern Trace Rehabilitation and Care Center; Courtyard Rehabilitation and Health Center, LLC; SA Eldercare, LLC; Progressive Eldercare Services – Morrilton, Inc. d/b/a Brookridge Cove Rehabilitation and Care Center; and John Ponthie, pray that their Motion to Compel Arbitration and Dismiss or Stay this action be granted and for all other relief to which they may be entitled to receive.

Respectfully submitted,

CarePlus Staffing Services, LLC; Southern Administrative Services, LLC; Summit Health and Rehabilitation, LLC; Progressive Eldercare Services, Inc. d/b/a Southern Trace Rehabilitation and Care Center; Courtyard Rehabilitation and Health Center, LLC; SA Eldercare, LLC; Progressive Eldercare Services – Morrilton, Inc. d/b/a Brookridge Cove Rehabilitation and Care Center; and John Ponthie,
Separate Defendants

By: *<u>/s/ Amber J. Prince</u>*
Kerri E. Kobbeman
Arkansas Bar No. 2008149
Amber Prince
Arkansas Bar No.2007247
CONNER & WINTERS, LLP
4375 North Vantage Drive, Suite 405
Fayetteville, AR 72703
(479) 582-5711, phone
(479) 587-1426, facsimile
kkobbeman@cwlaw.com
aprince@cwlaw.com

**CERTIFICATE OF SERVICE**

I, Amber J. Prince, hereby certify that on May 5, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing which will send notification of filing to all counsel of record.

*/s/ Amber J. Prince*
Amber J. Prince